IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRICE ANTHONY PEELER,

                    Petitioner,

          vs.

TAMMY FOSS, Acting Warden, Salinas
Valley State Prison,[1]

                    Respondent.

No. 2:15-cv-02582-JKS

MEMORANDUM DECISION

Brice Peeler, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas

Corpus with this Court pursuant to 28 U.S.C. § 2254. Peeler is in the custody of the California

Department of Corrections and Rehabilitation and incarcerated at Salinas Valley State Prison.

Respondent has answered, and Peeler has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On March 20, 2014, Peeler was charged by second amended information with two counts

of assault on a peace officer with a semiautomatic firearm (Counts 1 and 2), evading a peace

officer while driving recklessly (Count 3), and being a felon in possession of firearm (Count 4).

The information alleged as to Counts 1 and 2 that Peeler personally used a firearm. The

information additionally alleged as enhancements that Peeler had suffered a prior serious felony

conviction for criminal threats, had suffered a prior strike conviction, and had served three prior

prison terms. Peeler pled not guilty, denied the allegations, and proceeded to a jury trial. On

---

[1]     Tammy Foss, Acting Warden, Salinas Valley State Prison, is substituted for Dave
Davey, former Warden, California State Prison-Corcoran. FED. R. CIV. P. 25(c).

direct appeal of his conviction, the California Court of Appeal laid out the following facts

underlying the charges against Peeler and the evidence presented at trial:

> Sacramento County Sheriff's Detective Kevin Reali testified he received a call from Nevada County Sheriff's Detective Bingham on September 14, 2012, asking for help in serving a felony warrant on [Peeler]. Bingham told him [Peeler] might be armed with a handgun. Five days later, Bingham called again and asked Reali to check a house in the Antelope area of Sacramento. Reali saw a man leave the house, put something in the trunk of a Volvo, and get in the driver's seat. After a woman entered the Volvo, the Volvo left, and Reali tried to reach Bingham, without success. Reali reached Detective Jeff Martin, who asked him to check on a white panel van at a Walmart, because [Peeler] was thought to use it to hide things. Martin testified he told Reali that multiple informants had recently seen [Peeler] with "a handgun and/or a small assault style rifle" and that he always carried those weapons with him. Reali saw the van, called back-up, and when other officers arrived, Reali returned to the Antelope house.
>
> Reali learned a team comprised of Nevada and Placer County officers had found the Volvo in Orangevale, and went to discuss with those officers how to apprehend [Peeler] safely, given that they understood he might be armed, and there were two females in the Volvo, which was in motion. Reali entered Sergeant Gregory Coauette's unmarked Ford Expedition, "and we were maybe fifth or sixth . . . in the conga line, as you might say, into following the Volvo away. . . ."
>
> The Volvo turned into a parking lot and most of the "conga line" followed, but Reali and Coauette remained on Greenback Lane, so that when the Volvo unexpectedly left the parking lot, they were directly behind [Peeler] in the Ford. Coauette thought the line of unmarked cars behind them was perhaps eight or nine vehicles long. The Volvo's occupants looked back at the cars following them, and accelerated suddenly. The officers activated the Ford's lights and siren and pursued [Peeler], who attempted to elude the officers at high speed, running stop signs. When he stopped the Volvo, [Peeler] fled on foot. Reali saw [Peeler] held a handgun; Coauette ducked because [Peeler] pointed his gun over his shoulder, towards the officers, as he ran in front of their car. By the time Reali was able to get out of the car, [Peeler] had reached a lawn and jumped over a fence. To Reali, [Peeler] seemed to aim more towards Coauette. Coauette saw the gun "pointed straight in the window at me." "That handgun stayed on target [*i.e.*, pointed at Coauette] for quite a while." Reali had feared he and Coauette would be shot. Although Reali planned to shoot [Peeler] due to the risk he presented to the public and to the officers, by the time he got out of the car, [Peeler] had made it to the fence.
>
> A pistol was found in a tomato garden of a residential yard not far from where [Peeler] was captured, after he repeatedly defied orders to stop. The chamber was clear, as shown by moving the slide back, but the magazine was loaded. According to the testimony, "All you had to do was pull back on the slide and it would load the next cartridge [in the magazine]." The pistol, magazine, and cartridges from the magazine, were introduced into evidence and shown to the jury. The gun was not fired, nor was an effort made to chamber a round to see if it would jam.

2

A binder was found in the Volvo which contained pages listing different law enforcement radio frequencies.

The parties stipulated [Peeler] was a convicted felon.

*People v. Peeler*, No. C076528, 2015 WL 1254623, at *1-2 (Cal. Ct. App. Mar. 17, 2015).

At the conclusion of the three-day trial, the jury found Peeler guilty on Counts 1, 3, and 4, and not guilty on Count 2. The jury also found true the firearm enhancement, and the trial court found true the prior conviction and prior prison term enhancements. The trial court subsequently sentenced Peeler to an aggregate determinant imprisonment term of 38 years and 8 months.

Through counsel, Peeler appealed his conviction. On appeal, Peeler: 1) sought review of the materials reviewed *in camera* during his *Pitchess* hearing;[2] 2) contended that no substantial evidence showed that the pistol he used was operable; and 3) argued that trial counsel was ineffective because she conceded liability on one count and failed to promptly move to strike an officer's "gratuitous" testimony. The Court of Appeal unanimously affirmed the judgment against Peeler in a reasoned, unpublished decision issued on March 17, 2015. *Peeler*, 2015 WL 1254623, at *4. The California Supreme Court summarily denied review on June 25, 2015.

Peeler then filed in the Sacramento County Superior Court a *pro se* petition for writ of habeas corpus that raised 38 grounds for relief. The superior court denied the petition, finding

---

[2]     In *Pitchess v. Superior Court*, 522 P.2d 305 (Cal. 1974), the California Supreme Court recognized that a criminal defendant may, in some circumstances, compel the discovery of evidence in the arresting law enforcement officer's personnel file that is relevant to the defendant's ability to defend against a criminal charge. In 1978, the California Legislature codified the privileges and procedures surrounding what had come to be known as a *Pitchess* motion through the enactment of California Penal Code §§ 832.7 and 832.8 and California Evidence Code §§ 1043 through 1045. *People v. Mooc*, 36 P.3d 21, 24 (Cal. 2001) (citations omitted).

that the claims were largely raised on appeal or should have been raised on appeal, *see In re Dixon*, 264 P.2d 513, 514 (Cal. 1953) (holding that habeas relief is unavailable if "the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction"), and the remainder of the claims lacked merit.

Peeler then raised those 38 claims in a *pro se* habeas petition in the Court of Appeal, which Respondent opposed by way of informal response. The Court of Appeal denied the petition without comment on September 15, 2016. The Supreme Court also summarily denied a similar petition on December 14, 2016.

Peeler timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court about a week later. Docket No. 1; *see* 28 U.S.C. § 2244(d)(1)(A). Briefing on the First Amended Petition at Docket No. 22 ("Petition") is now complete, and the case is before the undersigned judge for adjudication.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Peeler raises the 38 claims he raised to the California state courts on habeas review, namely that: 1) trial counsel rendered ineffective assistance by failing to consult a handwriting expert in an attempt to show that a handwritten radio frequency document did not belong to Peeler; 2) Peeler's right to a fair trial was violated when the trial court informed the jury that he was in custody; 3) the prosecutor engaged in vindictive prosecution by amending the information to add a criminal charge after the preliminary hearing was held; 4) the admission of hearsay testimony by several law enforcement witnesses violated his rights to due process, a fair trial, and to confront the witnesses against him; 5) trial counsel rendered ineffective assistance by failing to object to the admission of

hearsay evidence that law enforcement officers were aware of the possibility that Peeler possessed one or more firearms; 6) the inclusion of peace officers as a sworn juror and an alternate violated his rights to a fair trial and impartial jury; 7) trial counsel was ineffective for allowing a peace officer to be impaneled as a juror; 8) trial counsel was ineffective for failing to object to the court informing the jury that Peeler was in custody; 9) the admission of a photograph of Peeler lying on the ground in handcuffs violated his right to a fair trial because it depicted tattoos that were inherently prejudicial; 10) trial counsel was ineffective for failing to object to the admission of the photograph; 11) trial counsel was ineffective for failing to object to a statement that wig-wag lights are only available for law enforcement vehicles; 12/13/14) the prosecutor committed misconduct by presenting false testimony; 15) his convictions were obtained as a result of an illegal wiretap, and trial counsel was ineffective for failing to move to suppress evidence that law enforcement tracked his cell phone using GPS without a warrant; 16/17) counsel was ineffective for failing to impeach law enforcement witnesses regarding alleged inconsistencies in their testimony; 18/25) there was insufficient evidence that his firearm was operable to support his assault on a peace officer with a semiautomatic firearm conviction and the true finding on the firearm enhancement; 19) the trial judge was biased against him in violation of his due process rights; 20) the imposition of a prior prison term enhancement was improper under Proposition 47; 21) the trial court violated his right to a fair trial and the presumption of innocence by informing the jury of his prior conviction; 22) trial counsel was ineffective for failing to file a motion to sever the felon in possession of a firearm charge; 23) appellate counsel was ineffective for failing to raise meritorious issues on appeal; 24) his Eighth Amendment rights were violated when the trial court imposed excessive restitution without

considering his ability to pay; 26) trial counsel was ineffective for conceding guilt on the evading charge; 27) trial counsel was ineffective for failing to object to prejudicial statements during Detective Reali's testimony; 28) the cumulative effect of the errors warranted reversal of his conviction; 29) the prosecutor violated *Brady*[3] by failing to investigate and prove that the handwriting of the radio frequency documents was not his; 30) trial counsel was ineffective for advising Peeler not to testify; 31) trial counsel was ineffective for failing to object to the court's failure to instruct the jury on lesser related offenses; 32) his sentence violated due process and the constitutional prohibition against double jeopardy; 33) trial counsel was ineffective for failing to file a *Pitchess* motion as to Sergeants Barnhart and Machado; 34) trial counsel was ineffective for failing to object when the prosecutor allegedly gave his personal opinion in summation that Peeler was guilty as charged; 35) appellate counsel was ineffective for failing to raise prosecutorial misconduct on direct appeal; 36/38) trial counsel was ineffective for failing to present the defenses of voluntary intoxication and entrapment; and 37) the admission of the binder of law enforcement radio frequencies found in Peeler's car violated the Confrontation Clause.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1962), and its progeny require the prosecution to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.    Procedural Bar

As an initial matter, Respondent urges the Court to find that a large number of Peeler's claims are procedurally defaulted from habeas review. Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims." *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992). "The state-law claim may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011). Procedural default does not preclude federal habeas review unless the last state court rendering judgment in a case "clearly and expressly" states that its judgment rests on a state procedural bar. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989) (quoting *Harris v. Reed*, 489 U.S. 255, 262-63 (1989)). "In order to constitute adequate and independent grounds sufficient to support a finding

of procedural default, a state rule must be clear, consistently applied, and well established at the time of the petitioner's purported default." *Morales v. Calderon*, 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotation marks and citation omitted).

The record reflects that Peeler raised Grounds 2-4, 6, 9, 15, 19, 21, 24, 29, 31, and 37 on state habeas in the Sacramento County Superior Court, which found the claims to be barred because they could have been, but were not, raised on direct appeal. *See In re Dixon*, 264 P.2d 513, 514 (Cal. 1953) ("The general rule is that habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constitu[t]ing an excuse for failure to employ that remedy, the writ will not lie where the claimed error could have been, but were not, raised upon a timely appeal from a judgment of conviction."); *see also In re Seaton*, 95 P.3d 896, 901 n.4 (Cal. 2004) ("What we mean when we invoke the *Dixon* bar is that the claim is *based on the appellate record*, and thus was fully cognizable on appeal insofar as it was preserved at trial."). While the Ninth Circuit has not explicitly found that a *Dixon* default is an independent and adequate state law ground, it has indicated that it is likely to do so with respect to the time period at issue here. *See Bennett v. Mueller*, 322 F.3d 573, 580-86 (9th Cir. 2003) (suggesting in dicta that *Dixon* rule would constitute an independent and adequate state-law ground when applied after the California Supreme Court's 1998 decision in *In re Robbins*, 959 P.2d 311 (Cal. 1998)); *see also Flores v. Roe*, 228 F. App'x 690, 691 (9th Cir. 2007) (finding claim procedurally barred based on *Dixon*); *cf. Park v. California*, 202 F.3d 1146, 1152-53 (9th Cir. 2000) (holding that *Dixon* bar was not independent state law ground prior to *Robbins*). Some courts in this district have accordingly concluded that habeas review is foreclosed when the petitioner has failed to place the adequacy of the *Dixon* rule at issue and has not shown cause and

prejudice or that a miscarriage of justice would result if the claim were not heard. *See, e.g.*, *Stribling v. Grounds*, No. 12-cv-3084, 2013 WL 5817668, at *4-5 (E.D. Cal. Oct. 29, 2013); *Cantrell v. Evans*, No. 07-cv-1440, 2010 WL 1170063, at *13-14 (E.D. Cal. Mar. 24, 2010).

Likewise, Peeler raised Grounds 12-14 in the habeas petition in the Superior Court. The court denied these claims for failure to state a *prima facie* case, with citation to *People v. Duvall*, which requires that facts be stated fully and with particularity, and that documentary evidence should be provided. 886 P.2d 1252, 1258 (Cal. 1995) (stating that habeas petitions "should both (i) state fully and with particularity the facts on which relief is sought as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations" (citations omitted)).

If a petition is dismissed for failure to state the facts with particularity—that is, with a cite to *In re Swain*, 209 P.2d 793, 796 (Cal. 1949) (a California habeas petition must state "with particularity the facts" upon which relief is sought)—the petitioner may file a new petition curing the defect. *See Gaston v. Palmer*, 417 F.3d 1030, 1037 (9th Cir. 2005); *see Kim v. Villalobos*, 799 F.2d 1317, 1319 (9th Cir. 1986). There is no reason the result should be any different when the defect in the state petition is the failure to attach documentary evidence. Neither the failure to attach documentary evidence nor the failure to plead with particularity are irremediable errors. It therefore appears that the California courts would have allowed Peeler to file a new state petition remedying these defects. *See Cross v. Sisto*, 676 F.3d 1172, 1177 (9th Cir. 2012) (California state court's denial of petitioner's habeas petition with citation to *Swain* constituted dismissal without prejudice and with leave to amend to plead required facts with

10

particularity and thus did not signify that petitioner's claims were procedurally barred as a matter of state law).

It is unnecessary, however, for this Court to decide whether any procedural bar exists to bar these claims here because, even assuming that such bar does not exist, as discussed below, Peeler is not entitled to relief on the merits of any of his claims. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (in the interest of judicial economy, the court may address a petition's merits without reaching procedural issues); *cf. Van Buskirk v. Baldwin*, 265 F.3d 1080, 1083 (9th Cir. 2001) (declining "to reach the complex questions lurking in the time bar of the AEDPA" where the district court "decided the case on the merits, and on the merits it was right as a matter of law").

B.    Merits

1.    Unfair Trial Claims (Grounds 2, 6, 19, 21)

Peeler first brings a number of claims based on an alleged deprivation of his constitutional right to a fair trial. "Central to the right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that 'one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.'" *Holbrook v. Flynn*, 475 U.S. 560, 567-68 (1986) (quoting *Taylor v. Kentucky*, 436 U.S. 478, 485 (1978)).

Peeler contends in Ground 2 that his right to a fair trial was violated when the trial court informed the jury that he was in custody. The Clerk's Transcript of the Record on Appeal indicates that the trial court intended to inform the jury during voir dire that Peeler was in

custody, however, the voir dire examination is not part of the trial transcript included in the record, despite Peeler's ability to have it included. *See* Cal. R. Ct. 8.320(c)(3) (oral proceedings of voir dire examination not typically included in the Reporter's Transcript in normal Record of Appeal), 8.324(b)(2)(A) (a defendant may nonetheless apply for the superior court to include the voir dire examination in the record). The record is thus devoid of any of the court's statements to the jury about Peeler's custodial status. This lack of evidentiary support is fatal to his claim. *Woodford v. Visciotti*, 537 U.S. 19, 15 (2002) (*per curiam*) (holding that state habeas petitioner carries the burden of proof).

In any event, even assuming that the trial court informed the jury during voir dire examination that Peeler was in custody, Peeler can point to no clearly-established authority of the U.S. Supreme Court holding that due process is violated by a trial court's informing the jury of a defendant's custodial status. This case is unlike those in which the Supreme Court recognized a "constant reminder" of a defendant's custodial status, *Estelle v. Williams*, 425 U.S. 501, 504-05 (1976) (prison clothing), or the possibility of an adverse affect on the jury's feelings about a defendant and his dangerousness, *Illinois v. Allen*, 397 U.S. 337, 344 (1970) (shackles and gags). Neither of these cases or their progeny clearly establish a right within the meaning of AEDPA to have the jury remain ignorant of Peeler's custodial status. In the absence of clearly established Supreme Court law supporting his claim, Peeler cannot obtain federal habeas relief. *See Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citations and internal quotations omitted); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the

question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law") (citation, internal brackets and quotations omitted).

Similarly, Peeler complains in Ground 21 that the trial court violated his right to a fair trial and denied him of the presumption of innocence when it informed the jury of his prior conviction.  But the fact of Peeler having suffered a prior felony conviction was an element of the charge that he unlawfully possessed a weapon in violation of CAL. PENAL CODE § 12021(a)(1) (felon in possession of a weapon), and, as such, was properly admitted.  *See Spencer v. Texas*, 385 U.S. 554, 558-69 (1967) (finding no due process violation when evidence of a prior felony conviction was admitted to prove a necessary element of a crime and the jury received a limiting instruction "that it should not consider the prior conviction as any evidence of the defendant's guilt on the charge on which he was being tried").  In fact, Peeler stipulated that he had suffered a prior felony conviction.  Consequently, the jury was entitled to hear evidence regarding Peeler's prior felony conviction for the limited purpose of determining his guilt on this charge.

Additionally, consistent with California law, the jury did not hear evidence regarding the nature of Peeler's prior offense.  *See People v. Cunningham*, 25 P.3d 519 (Cal. 2001) (finding that "although the jury is not entitled to learn the nature of the prior conviction, it must be advised that defendant is an ex-felon where that is an element of a current charge" (citations and internal quotation marks omitted)).  The parties' stipulation to this fact obviated the need for the jury to evaluate evidence to determine if Peeler had suffered a felony conviction for purposes of deciding his guilt or innocence as to that count.  Thus, to the extent there was any risk of prejudice to Peeler that the jury would misapply or misconstrue his status as a felon, that risk

was minimized. Given these circumstances, and in light of the express limitation in CALJIC No. 2.09 regarding the jury's consideration of the evidence of Peeler's prior conviction, the Court concludes that Peeler's rights to due process and a fair trial were not infringed by the information regarding his felony conviction. *See, e.g.*, *Spencer*, 385 U.S. at 558–69.

In Ground 6, Peeler next avers, without evidentiary support, that a peace officer was sworn as a juror and another peace officer served as an alternate. The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors. U.S. CONST. AMEND. VI; *see Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *Green v. White*, 232 F.3d 671, 676 (9th Cir. 2000). Due process requires that the defendant be tried by "a jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982); *see also United States v. Plache*, 913 F.2d 1375, 1377-78 (9th Cir. 1990). An impartial jury consists of jurors who will conscientiously apply the law and find the facts. *Lockhart v. McCree*, 476 U.S. 162, 178 (1986).

Here, however, Peeler's bare and conclusory allegation that the jury who convicted him was not impartial is manifestly insufficient to warrant habeas corpus relief. *Jones v. Gomez*, 66 F.3d 199, 204–05 & n. 1 (9th Cir. 1995); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). There is simply no evidence in the record to support Peeler's claim, and as noted above, Peeler did not move to have the voir dire examination included in the record on appeal. Again, the lack of evidentiary support is fatal to his claim. *Woodford*, 537 U.S. at 15.

Finally, Peeler claims in Ground 19 that the trial judge was biased against him. The Supreme Court has recognized that "the right to an impartial judge [is] among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless

error.'" *Greenway v. Schriro*, 653 F.3d 790, 805 (9th Cir. 2011) (quoting *Chapman v. California*, 386 U.S. 18, 23 (1967)). Where judicial bias is claimed, habeas relief is limited to circumstances in which the state trial judge's behavior rendered the trial so fundamentally unfair as to violate due process. *See Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995). To succeed on a judicial bias claim, a habeas petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008).

Peeler's conclusory statements are insufficient, however, to demonstrate that the trial judge was personally biased against him, engaged in misconduct, or otherwise deprived him of a fundamentally fair proceeding. Peeler's claims are largely based on the claimed errors raised in Grounds 2, 4, 21, 24, and 32. The Ninth Circuit, however, has repeatedly recognized that adverse rulings alone are insufficient to demonstrate judicial bias. *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 1995); *Taylor v. Regents of the Univ. of Cal.*, 993 F.2d 710, 712-13 (9th Cir. 1993); *Davis v. Fendler*, 650 F.2d 1154, 1163 (9th Cir. 1980). Accordingly, Peeler is not entitled to relief on any argument advanced in support of these grounds.

### 2. Prosecutorial Misconduct (Grounds 3, 12/13/14, 29)

Peeler next avers that the prosecutor committed misconduct in a variety of ways. First, he alleges in Ground 3 that he was subject to vindictive prosecution. According to Peeler, the prosecutor vindictively amended the information to add an additional count after Peeler filed a complaint against the arresting agency. The superior court denied the claim on state habeas review, concluding that Peeler "has not shown that the charges were made in apparent response to Petitioner's action. Instead, it appears that during the preliminary hearing, additional facts

15

were disclosed supporting the proposed amendment, which was filed shortly after the preliminary hearing."

Peeler fares no better on federal habeas review because, as the superior court reasonably concluded, he has failed to demonstrate that the prosecutor's decision to amend the information with an additional count was motivated by actual vindictiveness. Peeler provides nothing but speculation that the prosecutor amended the information solely to punish him for exercising his right to file a complaint against the arresting agency.

Peeler has also failed to make a showing sufficient to raise a presumption of vindictiveness or to overcome the presumption of prosecutorial regularity. First, the prosecutor's amendment was not a post-conviction action but rather a pretrial decision, which is presumptively lawful. *Cf. Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."). Likewise, the circumstances surrounding the amendment do not establish a likelihood of vindictiveness. Rather, the addition of those charges appears to have been a proper exercise of prosecutorial discretion. *See United States v. Preciado-Gomez*, 529 F.2d 935, 941 (9th Cir. 1976) (addition of new counts in a superceding indictment referring to conduct occurring prior to first indictment which was previously unknown or unproved by competent evidence is not vindictive prosecution). Accordingly, Peeler's claim of vindictive prosecution is unsupported in the record and does not warrant habeas relief.

For the same reasons, Peeler fails to show that the prosecutor presented false testimony by allowing three law enforcement witnesses to testify inconsistently with the reports each witness had written (Grounds 12/13/14). "[T]he [Supreme] Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnotes omitted). The essential elements of such successful claim are that (1) the testimony is false or perjured, (2) the prosecutor knew that the testimony was false or perjured, and (3) the false testimony was material. *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc); *see Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Murtishaw v. Woodford*, 255 F.3d 926, 959 (9th Cir. 2001).

Although the prosecutor has a duty to refrain from knowingly presenting perjured testimony, *United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir. 2002), the record does not support Peeler's contention that the prosecution knowingly introduced perjured testimony. Indeed, Peeler has failed to show by way of admissible, competent evidence that any prosecution witness perjured himself or herself at trial. As the superior court reasonably concluded on habeas review:

> Petitioner claims that Deputies Machado, Barnhart, and Reali testified falsely. The only "evidence" to support his claims consists of copies of police reports that apparently conflict with their trial testimony. However, their trial testimony is not attached. Therefore, Petitioner has not shown that the testimony even conflicted with their reports. Moreover, the reports were not made under oath. Consequently, while they may have been inconsistent with the deputies' trial testimony, the reports do not show that any false testimony was introduced at trial.

As the Ninth Circuit has held, mere inconsistencies in the evidence do not establish the knowing use of false testimony by the prosecutor. *See United States v. Geston*, 299 F.3d 1130,

1135 (9th Cir. 2002) (rejecting contention that the testimony of two prosecution witnesses regarding officer's use of a wooden, rather than metal, baton was false, even though some physical evidence supported finding that a metal baton was used, because "at most, two conflicting versions of the incident were presented to the jury"); *United States v. Zuno-Arce*, 44 F.3d 1420, 1423 (9th Cir. 1995) (fact that witnesses told stories that conflicted in various respects did not establish that the prosecutor knew that the testimony of any of the witnesses was false; and observing that "[l]awyers in criminal cases, for prosecution and defense, sometimes swim in a sea of lies, and must necessarily trust the jury to determine what is true, or whether reasonable doubt remains about what is true"). The assertedly-conflicting evidence on which Peeler's prosecutorial misconduct claim is predicated is insufficient to establish a *Napue* violation, and Peeler's claim must fail.

Peeler further argues in Ground 29 that the prosecutor violated *Brady* by failing to disclose evidence that documents found in his vehicle were not his. *Brady v. Maryland*, 373 U.S. 83 (1962), and its progeny require the prosecution to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching," *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Peeler, however, fails to demonstrate that the prosecution was in possession of and failed to disclose materially favorable information. The record indicates that Peeler was aware that the radio frequency documents were found in his car, and as the superior court correctly noted, the prosecution was not under any obligation to investigate for Peeler whether the handwriting on the documents could have belonged to someone else. Likewise, the superior court reasonably concluded that Peeler could not show that the purported evidence was material under *Brady*: "even if the writings were made by someone

18

else, Petitioner could have had knowledge of the contents of the writing." Peeler is thus not entitled to relief on any of his prosecutorial misconduct claims.

### 3. Evidentiary Errors (Grounds 4, 9, 17)

Peeler additionally avers that the trial court made a number of evidentiary errors. The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In this context, the Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly, limiting them to specific guarantees enumerated in the bill of rights. *Estelle*, 502 U.S. at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)). Indeed, the Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in the Federal Constitution." *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).

"The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (citing *Estelle*, 502 U.S. at 67). Where a due process violation is alleged stemming from an evidentiary challenge, federal courts review such alleged due process violations for whether admission of certain evidence "so infected the entire trial that the resulting

conviction violates due process." *Estelle*, 502 U.S. at 72. A habeas petitioner "bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir.), *as amended on reh'g*, 421 F.3d 1154 (9th Cir. 2005). The "[a]dmission of evidence violates due process only if there are *no* permissible inferences the jury may draw from it." *Boyde*, 404 F.3d at 1172 (quoting *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991)) (internal quotation marks omitted; emphasis in original); *see also Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (noting that the Supreme Court has not made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of a writ of habeas corpus).

Peeler first complains that the admission of testimony of several law enforcement witnesses that they had received information that Peeler was armed prior to contacting him constituted hearsay that violated his constitutional rights to confrontation and a fair trial. The Confrontation Clause of the Sixth Amendment mandates that a criminal defendant has the right to confront and cross-examine the witnesses against him. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). This generally means that out-of-court testimonial statements by a witness are not admissible against a defendant unless the witness is available for cross-examination at trial or the defendant had an opportunity to cross-examine the witness about the statements before trial. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). The Confrontation Clause applies only to "'witnesses' against the accused, i.e., those who 'bear testimony.'" *Id*. at 51 (citation omitted); *Davis v. Washington*, 547 U.S. 813, 823–24 (2006). "'Testimony,' in turn, is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact."

*Crawford*, 541 U.S. at 51 (citation and some internal punctuation omitted); *Davis*, 547 U.S. at 824. As the *Davis* court explained:

> [a] critical portion of [*Crawford*'s] holding . . . is the phrase "testimonial statements." Only statements of this sort cause the declarant to be a "witness" within the meaning of the Confrontation Clause. It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.

*Davis*, 547 U.S. at 821 (citation omitted). Thus, nontestimonial statements do not implicate the Confrontation Clause. *Giles v. California*, 554 U.S. 353, 376 (2008); *Whorton v. Bockting*, 549 U.S. 406, 420 (2007).

The Supreme Court in *Crawford* did not "spell out a comprehensive definition of 'testimonial,' "but it indicated that testimonial evidence includes, among other things, "police interrogations." *Michigan v. Bryant*, 562 U.S. 344, 131 S.Ct. 1143, 1148 (2011) (quoting *Crawford*, 541 U.S. at 68). Subsequently, in *Davis*, the Supreme Court explained that:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. at 822.

Further, in *Bryant*, the Supreme Court clarified that:

> [W]hen a court must determine whether the Confrontation Clause bars the admission of a statement at trial, it should determine the 'primary purpose of the interrogation' by objectively evaluating the statements and actions of the parties to the encounter, in light of the circumstances in which the interrogation occurs. The existence of an emergency or the parties' perception that an emergency is ongoing is among the most important circumstances that courts must take into account in determining whether an interrogation is testimonial because statements made to assist police in addressing an ongoing emergency presumably lack the testimonial purpose that would subject them to the requirement of confrontation.

21

131 S. Ct. at 1162.

In this case, Peeler cannot show that the testimony complained of by Peeler was admitted for a hearsay purpose. Rather, the testimony that law enforcement had heard there was a warrant for Peeler's arrest and that he was armed and dangerous was offered as an explanation for the conduct of law enforcement. Moreover, the evidence was provided to law enforcement for the primary purpose of addressing an ongoing emergency. The trial court specifically instructed the jury that the evidence was not to be considered for the truth of the matters asserted, and that it was to be considered for the limited purpose of explaining the officers' conduct. Thus, Peeler cannot show that the Confrontation Clause was implicated by the admission of the testimony.

Peeler similarly argues that the admission into evidence of the binder of law enforcement radio frequencies found in Peeler's vehicle violated the Confrontation Clause (Ground 37). The radio frequency documents, however, were not testimonial. There is simply no indication that they were created under circumstances where the primary purpose was to establish or prove past events potentially relevant to later criminal prosecution. Rather, the jury apparently agreed with the prosecution that the binders were created (either by Peeler or an associate) for the purpose of evading law enforcement. Peeler thus fails to show that their admission violated his right to confrontation.

Nor can Peeler prevail on his challenge to the admission of a photograph showing him handcuffed and lying on the ground (Ground 9), which the prosecution introduced to argue that the person ultimately arrested by Sergeant Machado was the same person who had committed the charged crimes, *i.e.*, Peeler. "The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process." *Holley*, 568 F.3d at 1101 (9th Cir. 2009).

22

"Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Id.* (citing *Williams*, 529 U.S. at 375). Absent such "clearly established Federal law," it cannot be concluded that the appellate court's ruling was an "unreasonable application." *Carey*, 549 U.S. at 77 (noting that, where the Supreme Court has not adequately addressed a claim, a federal court cannot find a state court ruling unreasonable). Peeler is therefore not entitled to relief on this claim either.

### 4. Fourth Amendment Claim (Ground 15)

Peeler additionally contends that his convictions were obtained as a result of an illegal wiretap in violation of the Fourth Amendment[4] and California's wiretap laws. His claim, however, is not cognizable on federal habeas review because his arguments are precluded by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial. The *Stone v. Powell* doctrine applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less

---

[4]     The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

than probable cause, and it applies regardless of the nature of the evidence sought to be suppressed. *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam).

The Ninth Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim. *See Moormann v. Schiro*, 426 F.3d 1044, 1053 (9th Cir. 2005). "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Oritz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). California provides such an opportunity, *see* CAL. PENAL CODE § 1538.5; *Gordan v. Duran*, 895 F.2d 610, 613-14 (9th Cir. 1990), and thus Peeler's Fourth Amendment claim is not cognizable here.

5.      Insufficiency of the Evidence (Grounds 18, 25)

Peeler next argues that there was insufficient evidence that his firearm was operable to support his assault on a peace officer with a semiautomatic firearm conviction and the true finding on the firearm enhancement. As articulated by the Supreme Court in *Jackson*, the federal constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the California court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court

"must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *Schlup v. Delo*, 513 U.S. 298, 330 (1995). The United States Supreme Court has recently even further limited a federal court's scope of review under *Jackson*, holding that "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam). *Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should

be drawn from evidence admitted at trial." *Cavazos*, 132 S. Ct. at 3-4. Under *Cavazos*, "a

federal court may not overturn a state court decision rejecting a sufficiency of the evidence

challenge simply because the federal court disagrees with the state court. The federal court

instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* at 4

(*quoting Renico v. Lett*, 559 U.S. 766, 773 (2010)).

The Court of Appeal considered and rejected Peeler's insufficiency of the evidence claim

on direct appeal as follows:

> [Peeler] contends there was no evidence the pistol was operable, therefore no
> substantial evidence supports his assault conviction because he lacked the "present
> ability" to inflict injury. Although there was no direct evidence the gun was operable, the
> pistol's operability was shown by circumstantial evidence.
>
> The trial court granted the People's request for what was described as a
> "pinpoint" instruction on assault with a firearm, as follows:
>
>> "Assault with a firearm does not require that the defendant actually shoot the
>> firearm or try to shoot the firearm. The test is whether the defendant
>> demonstrated the present ability to complete the attack. The present ability
>> element . . . is satisfied when a defendant has attained the means and location to
>> strike immediately, meaning that the defendant must have the ability to inflict
>> injury on the present occasion although the defendant need not have the ability to
>> inflict injury instantaneously."
>
> This instruction was based on *People v. Chance* (2008) 44 Cal.4th 1164. It
> emphasizes the "present ability" element, which—as [Peeler] maintains—includes the
> fact that a gun must be operable.
>
> The prosecutor in this case argued: "This gun was ready to go. Rack a round in
> and you're good." During closing argument, defense counsel conceded the gun was a "a
> semiautomatic handgun," but argued no fingerprints or DNA were found on it or the
> magazine, and suggested the officers were mistaken or lying about the gun, because of
> testimonial discrepancies.
>
> Based on the circumstances, namely, [Peeler's] flight with the gun, his act of
> pointing it at peace officers, the fact the magazine was loaded, and the fact that he
> discarded it while fleeing, the evidence supports the jury's implicit finding that he had
> the "present ability" to cause harm by firing the gun. This is in accord with the many
> cases holding that it may be inferred a gun is real and is loaded from a defendant's
> conduct with that gun. (*See, e.g.*, *People v. Rodriguez* (1999) 20 Cal. 4th 1, 10–13, *see
> id.* at p. 12 ["California courts have often held that a defendant's statements and behavior

while making an armed threat against a victim may warrant a jury's finding the weapon was loaded"]; *People v. Monjares* (2008) 164 Cal. App. 4th 1432, 1435–1438 [reasonable to infer gun displayed during robbery was not a toy]; *People v. Miceli* (2002) 104 Cal. App. 4th 256, 268–269.)

   As we observed 40 years ago: "[P]ointing an unloaded gun at another person with no effort or threat to use it as a bludgeon, is not an assault with a deadly weapon." (*People v. Orr* (1974) 43 Cal. App. 3d 666, 672.)  However, as we held long before that, whether a gun is operable may be inferred from all of the circumstances, and need not be shown by direct evidence.  (*See People v. Simpson* (1933) 134 Cal. App. 646, 651–652.)  In *Simpson*, the trial court granted a new trial, believing that the fact a cartridge had not been chambered in a repeating rifle with a loaded magazine meant there was no "present ability" to cause harm, a proposition with which we pointedly disagreed: "It is unreasonable to hold that a rifle is unloaded and that it is not susceptible of immediate discharge under such circumstances.  One may just as reasonably assert that a pistol with an automatic revolving cylinder filled with loaded cartridges does not constitute a deadly weapon, although the mere pressure of a finger upon the trigger releases a safety-pin and adjusts a cartridge in position to be discharged.  It is equally unreasonable to assert that an assailant has not the present ability to commit a violent injury upon the person of another by means of a sword or dagger because it is necessary to first withdraw the weapon from a scabbard which hangs by his side." (*Simpson*, at pp. 651–652.)

   The testimony was that a pull of the slide would have loaded a round from the magazine into the chamber.  Direct evidence of operability was not required, nor did [Peeler] attempt to produce any evidence the gun was inoperable, leaving the jury with the unrebutted circumstantial evidence outlined above, specifically, [Peeler's] bold conduct with the gun, from which the jury could rationally infer the gun was operable.

*Peeler*, 2015 WL 1254623, at *2-3.

   The appellate court's holding is both reasonable and fully supported by the record.  The determination is also compliant with federal law, under which circumstantial evidence and inferences drawn from the record may suffice to sustain a conviction.  *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995).  Based on the record, this Court cannot conclude that the California Court of Appeal's rejection of Peeler's  insufficiency claim with respect to the handgun's operability was an objectively unreasonable application of *Jackson*.  When the evidence is viewed in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt the elements of assault with a firearm and the firearm enhancement.

*See Juan H. v. Allen*, 408 F.3d 1262, 1278 n.14 (9th Cir. 2005).  Accordingly, the state court's rejection of Peeler's claim was neither contrary to nor an unreasonable application of clearly established federal law, and Peeler is therefore not entitled to habeas relief.

6.      Sentencing Errors (Grounds 20, 24, 32)

Peeler also contends that the trial court made a number of errors with respect to sentencing.  First, he claims that the imposition of a prior prison term was improper under Proposition 47, which redesignated some serious, non-violent crimes as misdemeanors instead of felonies and permitted resentencing for prisoners currently serving a sentence for any of the offenses that the initiative reduced to misdemeanors.  *See Turner v. Richardson*, No. 13-cv-454, 2016 WL 47445, at *1 (E.D. Cal. Jan. 5, 2016); CAL. PENAL CODE § 1170.18 (codifying Proposition 47).  Here, although Peeler labels his claims as federal "due process" and "equal protection" claims, he has effectively asked this Court to find that a California state court erred in interpreting and applying California state law.  Such a claim is not cognizable in federal habeas corpus.  *See, e.g.*, *Myles v. Rackley*, No. 16-cv-0278, 2016 WL 6298408, at *2 (E.D. Cal. Oct. 27, 2016), *Report and Recommendation adopted at* 2016 WL 7212801 (E.D. Cal. Dec. 12, 2016) (rejecting Proposition 47 claims on ground that "[f]ederal habeas corpus relief is unavailable for alleged errors in the interpretation or application of state sentencing laws by a state court"); *see also Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997) ("[A petitioner] may not . . . transform a state-law issue into a federal one merely by asserting a violation of due process.").  Peeler's Proposition 47 claim therefore must fail.

His claim that the trial court erred in imposing restitution without considering his ability to pay it (Ground 24) is likewise not cognizable here.  A petition for a writ of habeas corpus can

be entertained only on the ground that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Ninth Circuit has held that "§ 2254(a) does not confer jurisdiction over a habeas corpus petition raising an in-custody challenge to a restitution order." *Bailey v. Hill*, 599 F.3d 976, 984 (9th Cir. 2010) (footnote omitted). "[T]he remedy that [Petitioner] seeks, the elimination or alteration of a money judgment, does not directly impact—and is not directed at the source of the restraint on—his liberty." *Id.* at 981. A federal court, then, lacks jurisdiction to hear claims that challenge the money portion of a state judgment, such as a restitution order, which does not affect the duration of custody. *Id.*

In Ground 32, Peeler avers that his sentence violates due process and double jeopardy principles because the terms imposed for enhancements exceed the base terms. The constitutional guarantee of due process is fully applicable at sentencing. *See Gardner v. Florida*, 430 U.S. 349, 358 (1977). Likewise, the Double Jeopardy Clause of the Fifth Amendment states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The superior court rejected Peeler's due process claim because he "d[id] not explain how such a sentence is unconstitutional." Peeler similarly does not provide such explanation or support here. Moreover, the United States Supreme Court has ruled that the Double Jeopardy Clause does not apply to sentencing enhancements, nor does it "extend[] to noncapital sentencing proceedings" whatsoever. *Monge v. California*, 524 U.S. 721, 724 (1998); *United States v. Watts*, 519 U.S. 148, 154 (1997) (per curiam); *Witte v. United States*, 515 U.S. 389, 398-99 (1995). Thus, Peeler's enhancement claim does not state a claim upon which relief could be granted.

7.     Instructional Error (Ground 31)

Peeler next argues that the trial court erred in failing to instruct the jury on the lesser related offenses of drawing or exhibiting a firearm with the intent to resist or prevent arrest or detention by a police officer.  Because jury instructions in state trial are typically matters of state law, federal courts are bound by a state appellate court's determination that a jury instruction was not warranted under state law.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (noting that the Supreme Court has repeatedly held that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *see also Williams v. Calderon*, 52 F.3d 1465, 1480-81 (9th Cir. 1995).  An instructional error, therefore, "does not alone raise a ground cognizable in a federal habeas proceeding."  *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1986) (citation omitted).

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."  *Boyde v. California*, 494 U.S. 370, 380 (1990).  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.  *Francis v. Franklin*, 471 U.S. 307, 309 (1985).  This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well-established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id.* Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

The United States Supreme Court has held that the failure to instruct on a lesser included offense in a capital case is constitutional error if there was evidence to support the instruction. *Beck v. Alabama*, 447 U.S. 625, 638 (1980). The Supreme Court, however, has not decided whether to extend this rationale to non-capital cases. The Ninth Circuit, like several other federal circuits, has declined to extend *Beck* to find constitutional error arising from the failure to instruct on a lesser included offense in a non-capital case. *See Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000); *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998) ("[T]he failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question."); *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976) ("Failure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding."). Accordingly, the decision of the

California courts denying Peeler relief as to this claim was not contrary to United States Supreme Court authority as set forth in *Beck*.

Nevertheless, the Ninth Circuit has stated, without deciding, that "the refusal by a court to instruct a jury on lesser included offenses, when those offenses are consistent with defendant's theory of the case, may constitute a cognizable habeas claim" under clearly established United States Supreme Court precedent. *Solis*, 219 F.3d at 929.[5] Here, however, Peeler's defense was that he did not possess a firearm of any kind. Thus, the now-requested lesser-included offense instructions are inconsistent with his defense, and he is not entitled to relief on this claim either.

8.  Ineffective Assistance of Counsel (Grounds 1, 5, 7-8, 10, 11, 15-17, 22, 23, 26, 27, 30, 31, 33-38)

Peeler further alleges that trial counsel was ineffective in a variety of ways. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that appellate counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

---

[5]  A number of district courts in the Ninth Circuit, including this one, have questioned whether the Ninth Circuit's statement in *Solis* is required by the holdings of clearly-established Supreme Court authority. *See, e.g.*, *Garcia v. Sherman*, No. 14-cv-00980, 2018 WL 347866, at *15 n.1 (E.D. Cal. Jan. 10, 2018) (explaining that subsequent Ninth Circuit cases have cited *Solis* "for the absolute proposition that there is no clearly established federal constitutional right to instructions on lesser-included offenses in non-capital cases); *Chaidez v. Knowles*, 258 F. Supp. 2d 1069, 1096 n.15 (N.D. Cal. 2003) (suggesting that there is no clearly established Supreme Court authority for the *Solis* proposition). As discussed above, however, Peeler does not benefit from the *Solis* proposition in any event.

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Peeler must show that either his trial or appellate counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Peeler first raises a number of claims alleging that counsel was ineffective for failing to object or remedy alleged errors identified above. But, as discussed *supra*, Peeler fails to demonstrate any errors to which counsel should have objected or remedied. Accordingly, Peeler's accompanying ineffective assistance claims also must fail (Grounds 5, 7-8, 10, 15, 23, 27, 31, 34-35, 37). *See Rupe v. Wood*, 93 F.3d 1434, 1444-45 (9th Cir. 1996) (defense counsel's failure to raise a meritless argument or to take a futile action does not constitute ineffective assistance of counsel).

Nor can Peeler prevail on his freestanding ineffective assistance claims. On direct appeal, Peeler asserted (as he does in Ground 26 of the instant Petition) that counsel was ineffective for conceding the evasion charge. The Court of Appeal considered and rejected this claim as follows:

> Before trial, defense counsel conceded to the trial court that she did not plan to contest the evading charge, but would focus the defense on the firearm charges. During opening statements, she argued the evidence would show [Peeler] was not guilty of assaulting anybody. During an instructional conference, she declined any lesser offense instructions as to the evading charge, conceding [Peeler] must have known the persons chasing him were peace officers, and the trial court agreed "it is hard to imagine how any reasonable juror could conclude . . . that [Peeler] would not have known at least that there were officers behind him when you consider several minutes of lights and sirens" plus a "caravan" or "surveillance which [was] more like Keystone Cops in some ways," plus the fact [Peeler] had lists of radio frequencies in his car. Defense counsel conceded the point.
> During closing argument, she explicitly conceded that during the pursuit, "at some point" [Peeler] "knew that those were cops" and although this was not "the most egregious felony evasion" "I can't in good faith tell you that this wasn't a felony evasion. I think there was. I think it was pretty short."
> Detective Reali wore a black vest with gold lettering, four or five inches tall, stating "sheriff" across the front, and he had a badge displayed on his gun belt. Sergeant Coauette's vest had "sheriff written in two-inch letters across the front" and his radio had a "velcroed badge" on it. Reali testified that after [Peeler] left the shopping mall parking lot, which itself may have been a counter-surveillance maneuver, his passengers and possibly [Peeler] looked back at the unmarked Ford, therefore "we initiated our red lights and blue lights, forward facing, and our siren and advised that we were in pursuit."

34

Coauette saw the passengers looking back at them two or three times. [Peeler] responded by speeding up, passing vehicles, driving unsafely, and running stop signs. When the officers closed the distance, the passengers turned their heads and looked back as the Ford's lights were flashing and sirens were sounding.

Given this evidence, trial counsel could rationally conclude there was no purpose in disputing the evading charge, and instead focus her efforts on defeating the more serious charges of assault with a pistol upon a peace officer. In this connection we observe that counsel's tactic worked in part, because the jury acquitted [Peeler] of assault upon Reali, as charged in count two, although it convicted him of the assault against Coauette, as charged in count one.

"[C]andor may be the most effective tool available to counsel." (*People v. Mayfield* (1993) 5 Cal.4th 142, 177.) Counsel could rationally conclude that quibbling about the evading charge would have undermined her credibility in front of the jury.

*Peeler*, 2015 WL 1254623, at *3-4.

The Court of Appeal's determination is both reasonable and fully supported by the record. For the reasons thoughtfully and persuasively articulated by the Court of Appeal, Peeler is not entitled to federal habeas relief on this claim either.

Peeler's claims raised and rejected on state habeas review are likewise without merit. In Ground 1, he faults counsel for failing to consult a handwriting expert. The Ninth Circuit remains sensitive to the issue of retaining and consulting with defense experts. *See, e.g.*, *Weeden v. Johnson*, 854 F.3d 1063, 1070-71 (9th Cir. 2017) (holding that trial counsel was deficient in failing to seek psychological evaluation about effect of petitioner's youth on her mental state); *Richter v. Hickman*, 578 F.3d 944, 953-54 (9th Cir. 2009) (en banc) (trial counsel's failure to consult an expert in blood evidence constituted ineffective assistance), *rev'd by Harrington v. Richter*, 562 U.S. 86 (2011). The cases finding ineffective assistance based on defense counsel's failure to consult with an expert or offer expert testimony appear to involve situations where the prospective defense expert testimony would: 1) exonerate the defendant; 2) conflict with powerful expert testimony offered by the Government; 3) significantly weaken adverse

Government expert testimony; and 4) aid in preparing defense counsel's cross-examination of the adverse Government expert testimony. Here, however, Peeler fails to show that a handwriting expert who could opine on the obtained radio frequency document would be beneficial to his case; as discussed *infra* in Ground 29, the superior court properly concluded that "even if the writings were made by someone else, Petitioner could have had knowledge of the contents of the writing."

Peeler next avers that counsel was ineffective for failing to object to the prosecutor's statement that wig-wag lights could not be purchased by a civilian at a car dealership because those lights are exclusively used by law enforcement (Ground 11). As discussed above, however, it was reasonable for counsel to concede the evasion charge to more effectively attack the more serious charges; as such, it would have made little sense to attack the prosecutor's statement about the lights. The state court's rejection of Peeler's case was thus neither contrary to, nor an unreasonable application of, federal law.

In Grounds 16 and 17, Peeler contends that trial counsel was ineffective for failing to impeach law enforcement witnesses with their police reports. But as the superior court reasonably concluded on state habeas review, Peeler fails to show that the witnesses testified inconsistently with their police reports, and the claims fail.

Peeler also argues in Ground 22 that trial counsel should have moved to sever the felon in possession of a firearm count from the charges of assault on a peace officer with a semiautomatic firearm and evading a peace officer while driving recklessly. However, the record supports the state court's determination that informing the jury of Peeler's prior conviction would not be unduly prejudicial when compared to the serious nature of the assault with a firearm and reckless

evasion charges and in light of the evidence that Peeler was wanted on a felony warrant suspected by law enforcement to be armed and dangerous. In the absence of prejudice, such severance motion would have been futile. *See People v. Gomez*, 29 Cal. Rptr. 2d 94, 97 (Cal. Ct. App. 1994) (explaining that California has a "strong legislative policy in favor of joinder of charges unless there is prejudice"). Trial counsel therefore cannot be faulted for choosing to refrain from filing one.

In Ground 30, Peeler avers that counsel was ineffective for advising him not to testify. A tactical decision exercised by counsel deserves deference when counsel makes an informed decision based on strategic trial considerations and the decision appears reasonable under the circumstances. *See Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994). On the other hand, "it cannot be permissible trial strategy, regardless of the merits or otherwise, for counsel to override the ultimate decision of a defendant to testify contrary to his advice," *United States v. Mullins*, 315 F.3d 449, 453 (9th Cir. 2002), because "a defendant in a criminal case has the right to take the witness stand and testify in his or her own defense," *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). A defendant may, however, waive this right, either explicitly or implicitly. *See United States v. Pino-Noriega*, 189 F.3d 1089, 1094 (9th Cir. 1999). Such a waiver may be inferred from a defendant's failure to testify at trial or to notify the trial court of his desire to testify. *See id.* at 1094-1095. "Although the ultimate decision whether to testify rests with the defendant, he is presumed to assent to his attorney's tactical decision not to have him testify," unless he "reject[s] his attorney's tactical decision by insisting on testifying, speaking to the court, or discharging his lawyer." *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993).

Here, Peeler has failed to demonstrate that counsel rendered prejudicially ineffective assistance by advising him to waive his right to testify on his own behalf. The record does not indicate that Peeler ever expressed to the trial court that he intended or desired to testify over counsel's objections or advice. While Peeler may now wish, with the benefit of hindsight, that he had testified at trial, the record reflects that Peeler voluntarily waived that right. Peeler therefore fails to demonstrate ineffective assistance of counsel with respect to that claim.

Peeler also contends that trial counsel should have filed additional *Pitchess* motions as to Sergeants Barnhart and Machado (Ground 33). In *Pitchess*, the California Supreme Court held that a criminal defendant is entitled to discover an officer's personnel records if the information contained in them is relevant to his ability to defend against the charge. *Pitchess*, 522 P.2d at 309. To obtain disclosure of police personnel records, a defendant must submit affidavits establishing "good cause." CAL. EVID. CODE § 1043(b)(3); *Warrick v. Superior Court*, 112 P.3d 2, 6 (Cal. 2005). Good cause exists when the defendant demonstrates (1) materiality of the requested material to the subject matter of the pending action, and (2) a reasonable belief the agency has the type of information sought. CAL. EVID. CODE § 1043(b)(3); *Warrick*, 112 P.3d at 10. If a defendant meets the requisite standard, the trial court conducts an *in camera* review of the records to determine if they are relevant. *See* CAL. EVID. CODE § 1045. In this case, Peeler fails to show what would have been discovered if counsel had filed a *Pitchess* motion. His bare assertion that such motion would have uncovered evidence that was consistent with or relevant to his defense is insufficient to warrant federal habeas relief. *See Osumi v. Giurbino*, 445 F. Supp. 2d 1152, 1163 (C.D. Cal. 2006) ("petitioner's mere speculation regarding evidence possibly contained in the arresting officers' personnel files is manifestly insufficient to

demonstrate petitioner was in any manner prejudiced by trial counsel not filing a *Pitchess* motion").

Peeler further faults counsel for failing to present voluntary intoxication and entrapment defenses (Grounds 36, 38). There was, however, no evidence at trial to support either defense. There simply was no evidence that Peeler's conduct in attempting to avoid detection by law enforcement was caused by drugs or intoxication. Moreover, voluntary intoxication is not a defense to the general intent crimes of assault and felon in possession of a firearm. *People v. Williams*, 29 P.3d 197, 204 (Cal. 2001); *People v. Jeffers*, 49 Cal. Rptr. 2d 86, 89 (Cal. Ct. App. 1996). Likewise, the evidence at trial indicated that Detective Reali and Sergeant Coauette were wearing uniforms, flashing red and blue lights on their vehicle and sounding a siren as they pursued Peeler; Peeler thus fails to show that entrapment was a viable defense. Peeler is thus not entitled to relief on any of his ineffective assistance claims.

9.     Cumulative Error (Ground 28)

Finally, Peeler claims that the cumulative effect of the errors warrant reversal of his conviction. The Ninth Circuit has stated "[t]he Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting trial fundamentally unfair." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (citing *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973)); *see also Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000). "Cumulative error applies where, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors has still prejudiced a defendant." *Jackson v. Brown*, 513 F.3d 1057, 1085 (9th Cir. 2008) (quoting *Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000)). Where

"there are a number of errors at trial, 'a balkanized, issue-by-issue harmless error review' is far less effective than analyzing the overall effect of all the errors in the context of the evidence introduced at trial against the defendant."  *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996) (quoting *United States v. Wallace*, 848 F.2d 1464, 1476 (9th Cir. 1988)).

"While the combined effect of multiple errors may violate due process even when no single error amounts to a constitutional violation or requires reversal, habeas relief is warranted only where the errors infect a trial with unfairness."  *Peyton v. Cullen*, 658 F.3d 890, 896-97 (9th Cir. 2011) (citing *Chambers*, 410 U.S. at 298, 302-03).  Such "infection" occurs where the combined effect of the errors had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (citation omitted).  In other words, where the combined effect of individually harmless errors renders a criminal defense "far less persuasive than it might [otherwise] have been," the resulting conviction violates due process.  *See Chambers*, 410 U.S. at 294.

As discussed throughout this opinion, Peeler does not demonstrate federal constitutional errors that would establish prejudice in the aggregate.  *See, e.g.*, *Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible.").  Peeler is therefore not entitled to relief on this claim.

### V. CONCLUSION AND ORDER

Peeler is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to grant a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is directed to enter judgment accordingly.

Dated: July 15, 2019.

   /s/James K. Singleton, Jr.   
JAMES K. SINGLETON, JR.
Senior United States District Judge
